NASH ET AL., APPELLANTS, *v.*
GENERAL ELECTRIC COMPANY, APPELLEE.

(No. 752—Decided March 21, 1979.)

*Mr. Thomas R. Reinstatler,* for appellants.
*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. John C. Parks,* for appellee.

*Per Curiam.*   The appellants here, Sally Nash and Dennis Nash and their subrogee, Nationwide Mutual Insurance Company, brought an action in the Court of Common Pleas of Clermont County against the appellee, General Electric Company. The plaintiffs alleged in their complaint that a defective toaster oven manufactured by the defendant was the direct and proximate cause of a fire which substantially destroyed

their residence on February 1, 1975. The cause came on for trial with the intervention of a jury on November 28, 1977. At the conclusion of the plaintiffs' case the trial court granted defendant's motion for a directed verdict. It is from this action of the trial court that the plaintiffs bring their appeal.

In 1970, Sally and Dennis Nash received a General Electric toaster oven, Model No. T93B, in an unopened manufacturer's box. The record discloses that at the time the box was opened there was no evidence that the toaster oven had sustained any damage in shipment. The record further reflects that there had been no maintenance performed on the appliance, that it had not malfunctioned, and that it had not been dropped or otherwise abused during its period of usage.

On February 1, 1975, a fire occurred at the Nash residence. At that time the toaster oven had been used approximately once a week for five years without incident. An employee of the defendant testified for plaintiff that the normal service life of that model of toaster oven was ten years, and that a nondefective appliance could not start a fire. After the fire, which caused extensive damage to the Nash home, the toaster oven was found among the debris.

Two expert witnesses testified on plaintiffs' behalf. The record before us would lead one to understand that these experts conducted their investigation as a team. One expert, O'Keefe, investigated potential sources of fire and determined the location of the origin of the fire. He also determined that three electrical items were located near the fire's origin: an electrical outlet, a refrigerator, and the toaster oven.

The other expert, McCleary, then examined these electrical items. He eliminated the refrigerator and the electrical outlet as sources of the fire. He testified that he found a crack in the ceramic insulator in the toaster oven which caused an electrical failure in the "on-off," or power switch, area of the oven. He further testified that it was his opinion that it was a reasonable, scientific certainty that the electrical shorting inside the toaster oven, caused by a crack in the ceramic insulator which allowed the conductors to come in close proximity to each other to permit arcing, caused the fire.

It would appear from the trial court's comments, based upon the record, that a defect had been proven and that this defect was the direct and proximate cause of plaintiffs' damages.

Plaintiffs urge a single assignment of error, to wit:

"The trial court erred to the prejudice of plaintiffs-appellants in granting a motion for a directed verdict in favor of defendant-appellee."

The law in Ohio is clear that in an action in the area of products liability, brought under the theory of strict liability in tort, the plaintiff's burden consists of alleging and proving by a preponderance of the evidence: (1) that there was in fact a defect in the product manufactured and sold by the defendant; (2) that *such defect existed at the time the product left the hands of defendant;* and, (3) that the defect was a direct and proximate cause of the plaintiff's injuries or loss. *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227; *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151. We believe that the trial court erred in its interpretation of the Supreme Court's pronouncements on the issue *sub judice.*

In *Friedman* v. *General Motors Corp.* (1975), 43 Ohio St. 2d 209, the syllabus reads as follows:

"A defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence."

A manufacturer of a product impliedly warrants in the sale of that product that it is "of good and merchantable quality, fit and safe for***[its] ordinary intended use." *Lonzrick* v. *Republic Steel Corp., supra,* at 235.

The question arises, does the passage of time, given the usage of the product without incident, preclude the owner from demonstrating a defect at the time the product left the hands of the manufacturer? In our view that question must be answered in the negative in light of the Supreme Court's holding in *Friedman* v. *General Motors Corp., supra,* where the car involved had been used for a period of seventeen months without previously malfunctioning.

As we read the record, at the close of plaintiffs' case, it demonstrates that there was a defect in the product manufactured and sold by the defendant, and that defect was the direct and proximate cause of the plaintiffs' injuries or plaintiffs' losses. This leads us to a determination of the third element, *i.e.,* did the defect complained of exist at the time the product left the hands of the appellee? The trial court apparently concluded that five years of normal usage of the appliance

prevented an inference that the toaster oven was defective when sold, and further, that the evidence at that point was insufficient to permit reasonable minds to reach a different conclusion. We do not agree with the trial court's finding. At least on the state of the record at the end of plaintiffs' case there was direct evidence as to a defect and the proximate causal relationship of the defect to the loss. Additionally, there was circumstantial evidence to prove that the defect complained of existed at the time the product left the hands of the defendant. *Friedman* v. *General Motors Corp., supra.* There is nothing in the record which we have observed which indicates that there was a previous malfunction of the product or that it had been in any way mistreated, abused or damaged, and, as a consequence, the jury could have drawn the inference that the product was defective at the time it was manufactured and sold by the defendant.

Under the law of Ohio, the jury has the right to make any logical and immediate inferences from facts which have been established by the evidence. An inference is a reasonable deduction of fact which logically follows from all of the facts established by the evidence which a jury may, but is not required, to make. We are of the opinion that plaintiffs are not required to offer evidence which would eliminate all other possibilities as to the time and place the defect could have occurred. We, of course, apply the test set forth in Civ. R. 50. That rule reads in part as follows:

"(A) Motion for directed verdict.***

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

It is our judgment that the assignment of error is well taken.

*Judgment reversed*
*and cause remanded.*

KEEFE, P. J., SHANNON and CASTLE, JJ., concur.