WHITE, EXECUTRIX, *v.* DEALERS
TRANSIT, INC., APPELLANT;
HOLLAND HITCH COMPANY, APPELLEE.

(No. 78 C.A. 203 — Decided September 8, 1980.)

*Mr. Stephen T. Bolton* and *Mr. Timothy J. Jacob,* for appellant.

*Mr. William C. H. Ramage,* for appellee.

LYNCH, J. Third-party plaintiff, Dealers Transit, Inc., is appealing the November 29, 1978 judgment of the court of common pleas in favor of third-party defendant Holland Hitch Company against said third-party plaintiff who was a defendant in an action that arose out of an accident that occurred on October 31, 1972 between James Reed, an employee of Dealers Transit, Inc., and Dean White. As Reed exited the terminal yard of Dealers Transit, Inc. with a tractor-trailer onto Ohltown Road in Austintown, and turned right, the trailer separated from the tractor and continued traveling across Ohltown Road. The unattached trailer collided with White's car resulting in his death.

Dealers Transit, Inc. settled with plaintiff for the sum of $300,000 and then filed subject action against third-party defendant on the ground that the trailer's hitching mechanism, which was manufactured by third-party defendant, was defective and unfit for the ordinary use for which it was intended because it was negligently and improperly designed and manufactured; that said hitching mechanism malfunctioned and failed to hitch the trailer securely to the tractor unit and that this malfunction was the proximate cause of the October 31, 1972 accident. Dealers Transit's action is based on the alleged negligence liability and

strict liability in tort on the part of Holland Hitch Company.

The record indicates that the hitching mechanism, which is known as a "fifth wheel," was manufactured by Holland Hitch Company and was attached to subject tractor. The fifth wheel sits horizontally on the back of the tractor. It is one of the "2500 Slider Series" and is called a "thirty-six inch slide"; it is circular in shape with a grooved, V-shaped opening which faces the rear of the tractor. Within this grooved opening is the hitching mechanism.

A trailer has a kingpin protruding downward in its front end. The head of the kingpin is shaped similarly to a spool of thread with the middle portion indented from the more protruding outer edges. The indentation will be referred to in this opinion as the "neck of the kingpin." Subject trailer was manufactured by Hyster and had a floating or movable kingpin that was not anchored in place when in use.

The fifth wheel of the tractor is backed toward the trailer. The kingpin of the trailer enters the V-shaped opening of the fifth wheel and compresses the sliding lock which causes the swinging lock to clamp around the kingpin. As the swinging lock completes its encirclement of the kingpin, a lock bar slides behind the closed locks and secures the locks. In order to disconnect a clamped kingpin the release handle in the side of the fifth wheel has to be pulled.

Subject fifth wheel had a lock guard whose purpose is to prevent the locking of the kingpin when such kingpin comes in too high for a proper coupling. The lock guard is similar in appearance to a tongue depresser with the top portion curved underneath the sliding locks. When the lock guard is in its natural "up" position it blocks the swinging lock from closing around the kingpin. When the kingpin enters the fifth wheel at the proper level, it depresses the lock guard and allows the swing lock to pass over the lock guard and to clamp the neck of the kingpin. Without the lock guard it is possible for the kingpin to enter the fifth wheel at such a height that the locking mechanism could clamp around the lower flange or the bottom end of the kingpin instead of the neck with the result that the kingpin could come loose during the operation of the tractor-trailer.

The experts of both parties assumed that when Reed attempted to hitch his tractor to the Hyster trailer, the result was a high hitch; that is, the locking mechanism clamped around the lower flange instead of the neck of the kingpin, although they disagree as to what caused the high hitch. If a high hitch is not secured, the trailer can be pulled over a level surface but will separate from the tractor if either the tractor or trailer rocks one way or the other, turns or hits a large enough bump.

The evidence indicated that the life expectancy of subject fifth wheel is 400,000 to 500,000 miles and that subject tractor had travelled 120,000 miles at the time of subject accident.

Holland Manufacturing Company and Dealers Transit, Inc. filed fourth-party complaints against Hyster Manufacturing Company whose motion for summary judgment was sustained by the trial court on October 21, 1977 because of the failure to notify or to afford Hyster Manufacturing Company an opportunity to defend the claim of Wilma N. White, Executrix, against Dealers Transit, Inc.

This case was tried before the trial court without a jury. The evidence before the court consisted of the testimony of Dr. Richard L. Fox and Dr. Samuel A. Martin and the depositions of James H. Reed, Dr. Edwin Pejack and Phillip Young, as well as exhibits. The trial court held as follows:

"This Court having reviewed the above evidence and the briefs of the parties, it is the opinion of this Court, based upon the greater weight of the evidence, that, at the time of the fifth wheel in question left the possession of Holland Hitch

Company, it was neither defective in design nor manufacture and had complied with all warranties, express or implied. It is further the opinion of this Court that the characteristic of the fifth wheel which permitted the so called 'lock guard' to become hung up in the down position when manually operated was not a proximate cause of the accident; rather, the accident was proximately caused by the active negligence of James H. Reed who had originally hitched the tractor to the trailer in question but who had failed to adequately or properly inspect and test the hitch to make certain that it was secure."

Phillip W. Young, former vice president of Dealers Transit who was in charge of safety, personnel and claims, testified in his deposition that when Reed was hired in July 1972 he was given pre-employment written and road tests including hitching and unhitching the tractor-trailer unit; that the recommended way to test whether there is a secure hitch is to lock the brakes on the trailer and attempt to pull away from the trailer; the floating kingpins, he believed, were more commonly used than fixed kingpins; that around 1972 Dealers Transit had a number of trailers with floating kingpins; that he was not aware whether the floating kingpins on Dealers Transit's trailers were "commonly" anchored in place when in use or whether any specific instructions were given to their drivers as to the possibility that a floating kingpin that was not anchored in place when in use would float up inside the sleeve in the trailer so that there would be no gap between the fifth wheel and trailer if a proper latch was not made.

Reed, an experienced tractor-trailer operator, who at the time of subject accident operated subject tractor which he owned and leased to Dealers Transit, testified by deposition that when he bought his tractor, it was used; that he had no knowledge prior to subject accident of any defect in subject fifth wheel; that subject fifth wheel was inspected every thirty days as required by Interstate Commerce Commission regulations; that subject fifth wheel had been inspected within ten days of subject accident; that no one, including Dealers Transit, ever gave him any instructions pertaining to the Holland Hitch mechanism; that he understood that the lock guard on his fifth wheel would prevent the hitching mechanism from locking around the head or lower flange of the kingpin; that he did not know that the hitching mechanism of his fifth wheel could lock around the head or lower flange of the kingpin; that when there was a stationary kingpin he could tell that there was not a good hitch because of the space between the fifth wheel and the trailer; that his only experience with removable kingpins was when he started to work for Dealers Transit; that there was no locking device to anchor the kingpin on subject trailer; that he was aware that such a kingpin could be pushed upward when an attempt was made to engage it with a fifth wheel; that prior to subject accident he backed his tractor into subject trailer; that his tractor was lined up level with the throat of the fifth wheel; that he heard the jaws of the fifth wheel snap; that he got out of the tractor and looked at the fifth wheel from the side and could not see any space between the trailer and the fifth wheel; that he looked at the locks of the fifth wheel from underneath the trailer; that the locks of the fifth wheel were closed; that he did not notice whether the lower flange of the kingpin was protruding below the locking mechanism of the fifth wheel; that he did not look at the top of the trailer to see if the top of the kingpin was protruding above the trailer bed; that he dragged the trailer with its skids for fifteen to twenty feet; that he believed that he had made a good hitch with the trailer; that as he pulled the trailer he hit a bump about forty feet from Ohltown Road and that after the accident, the hitching mechanism of the fifth wheel was locked.

Dr. Richard L. Fox, Associate Professor of Engineering at Case-Western Reserve University, testified on behalf of Dealers Transit, Inc. that he examined and tested subject fifth wheel and that in his opinion the lock guard on subject fifth wheel was improperly designed and manufactured and that subject fifth wheel malfunctioned in that the lock guard failed to prevent a high hitch. As a basis for his opinion, Dr. Fox testified that when he pushed the lock guard down a certain way it would become stuck behind the locking block; that when the lock guard was so stuck, the locking mechanism would still function so that the lock guard no longer prevented a high hitch. Dr. Fox made measurements of the lock guard and determined that the slide part of the lock guard, which was welded onto the bracket, was off-center from the bracket by somewhere between two and three degrees which caused the end of the lock guard to be off center by approximately one-third of an inch. Dr. Fox further testified that the holes drilled in the lock guard were so much larger than the size of the pin which attached the lock guard to the body of the fifth wheel that the lock guard had some "play," and that this loose fit resulted from the manufacturing of this lock guard rather than wear from use. Dr. Fox's opinion was that the manufacture of subject lock guard was unacceptable because of the amount of angle that it was off-center; that when Reed backed his tractor into subject trailer, the kingpin came into the fifth wheel in a high hitch position because of the unevenness of the ground; and that subject lock guard was not functioning properly at this time because it could become stuck under the end of the locking bar in normal operations and could not prevent the high hitch which occurred in this case and which it was designed to prevent.

On cross-examination, Dr. Fox stated that he had Reed back his tractor into subject trailer at least six times and did not get a bad hitch and that he had no background in trucking.

Dr. Samuel Martin, Chief Engineer for Holland Hitch Company, testified that he tested subject fifth wheel at his factory test bench in which a kingpin was moved into the locking mechanism of subject fifth wheel several times in a proper position and in a high hitch position; that the locking mechanism, including the lock guard, functioned properly; that he manually depressed the lock guard and released it; and that the lock guard always returned to its proper position. Dr. Martin also testified that the kingpin is fixed in a trailer so that it cannot move from side to side; and that depressing the lock guard manually is not comparable to backing a tractor into a kingpin on a trailer.

Dr. Martin further testified in detail to establish that subject lock guard was properly manufactured; that subject lock guard was bent to one side by being struck repeatedly by the swinging lock on attempted high hitches and that the condition of this lock guard should have been known to Dealers Transit since the fifth wheel must be periodically inspected in accordance with regulations of the Department of Transportation.

Dr. Martin further testified that he was familiar with trailers; that his company also manufactured kingpins for trailers; that his company was aware of movable kingpins on trailers but that such movable kingpins were designed to be held in place either by a locking bar that is placed over such kingpin or by a screw-in type of kingpin; that his company was unaware of the Hyster floating kingpin design which does not anchor the kingpin in place when in use until subject accident; that, in his opinion, the Hyster floating kingpin design was not in accordance with generally accepted engineering principles and that, in effect, the design of his company's fifth wheels was for fixed kingpins.

In Dr. Martin's opinion, subject tractor and trailer separated because when Reed attempted to hitch his tractor to the

Hyster trailer the floating kingpin depressed the lock guard, but, as the kingpin travelled over the lock guard, the spring force of the lock guard pushed the floating kingpin upward into the trailer; the bolster plate of the trailer rested on top of the fifth wheel. The kingpin, while continually moving up, was also approached by the sliding lock which, upon contact, compressed and started the swinging lock to clamp around the kingpin. However, because of the upward movement of kingpin, it resulted in a high hitch on the kingpin which was on the lower flange instead of the neck, even though the trailer was flush with the top of the fifth wheel.

In a high hitch with a fixed kingpin there is an approximate two-inch air space between the trailer and fifth wheel. In a high hitch with a floating kingpin that is not anchored when in use, as in this case, there would be no air space between the trailer and fifth wheel.

Dr. Martin further testified that a driver could tell if he had a high hitch by crawling up under the trailer and looking into the throat of the fifth wheel. If the lower flange of the kingpin was not protruding below the lock, this would indicate a high hitch. Furthermore, if the driver had gotten up on the back of the tractor or on the trailer and looked down the top of the part of the trailer over the fifth wheel of the tractor, he would have been able to see the top of the kingpin protruding out of the trailer.

Third-party plaintiff's first, second and fourth assignments of error are as follows:

"I. The finding by the trial court that the fifth wheel in question was defective neither in design nor in manufacture and had complied with all warranties, is against the manifest weight of the evidence and is contrary to law.

"A. The fifth wheel was defective because an integral component, the lock guard, was improperly manufactured and assembled.

"B. The fifth wheel was defective because it was improperly designed so as to conceal an insecure hitch.

"C. Holland's failure to warn of the dangerous propensities of the fifth wheel renders the product defective as a matter of law.

"II. The trial court erred in neglecting to find that appellee failed to issue proper warnings concerning the use of its products.

"* * *

"IV. The trial court erred in entering judgment in favor of Holland and against Dealers.

"A. Dealers is entitled to recovery against Holland based upon negligence liability.

"B. Holland is strictly liable in tort for the damages suffered by Dealers."

We will discuss these assignments of error together because they are interrelated.

All of subject assignments of error of Dealers Transit are based on the assumption that the trial court accepted Dr. Martin's testimony as to the manufacture of the lock guard on subject fifth wheel and as to how subject tractor separated from subject trailer at the time of subject accident.

A judge, before whom a case is tried without a jury, is the sole judge of the credibility of witnesses, and a reviewing court cannot invade the province of the trier of facts as to the credibility of witnesses. *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 156 [34 O.O.2d 270]; *Baynes* v. *McKee* (1951), 67 Ohio Law Abs. 95; 56 Ohio Jurisprudence 2d 853-854, Witnesses, Section 416.

To the extent that there is a conflict of testimony between the witnesses of both parties, we must accept the finding of the trial court.

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], the court stated as follows on page 321:

"It is now well established that, in order for a party to recover based upon a

strict liability in tort theory, it must be proven that: '(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.' *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151 [65 O.O.2d 374]. Under Ohio law, a defect is considered to exist in a product which is not 'of good and merchantable quality, fit and safe for * * * [its] ordinary intended use.' " *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 235 [35 O.O.2d 404].

It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. *Temple* v. *Wean United, Inc., supra,* at 326; *Gossett* v. *Chrysler Corp.* (C.A. 6, 1966), 359 F. 2d 84, 87 [36 O.O.2d 207].

The manufacturer has a duty to warn the user of any dangerous propensity in the use of the product of which it knew or should have known in such a way that if the warning were followed the product would be safe. The manufacturer, for purposes of the duty to warn, is held to the degree of knowledge and skill of experts. The warning on the label of a product must reasonably be calculated to reach a user but the manufacturer is not required to anticipate each and every risk. *Peterson* v. *B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 366 N.E. 2d 144; *Crane* v. *Sears Roebuck & Co.* (1963), 218 Cal. App. 2d 855, 32 Cal. Rptr. 754.

The question of what is ordinary or foreseeable use is one of fact. *Williams* v. *Brown Mfg. Co.* (1968), 93 Ill. App. 2d 334, 236 N.E. 2d 125, 133.

The court, in determining whether there is a duty to warn, must consider whether the injuries were foreseeable. It must consider whether it is reasonable to expect that such an injury would occur, not whether it is remotely possible that such an injury would occur. *Peterson, supra,* at 149.

Dealers Transit's first contention is that the lock guard component of subject fifth wheel was defective because it was improperly designed, manufactured and assembled. Its testimony was that this lock guard, when pushed down a certain way, would become stuck behind the locking block in which position it could no longer prevent a high hitch.

Dr. Martin's testimony was that subject lock guard was properly manufactured; that this lock guard functioned properly when tested by his company; and that the separation of subject trailer from subject tractor was caused by the floating or movable kingpin that was not anchored in place rather than by the malfunctioning of the lock guard.

Upon a review of the entire record before us in this case, we hold that the evidence supports the decision of the trial court that the lock guard of subject fifth wheel was not defective in manufacture or assembly and had complied with all warranties express or implied. The evidence established that subject lock guard worked properly in all tests with a kingpin. Dr. Fox's opinion was based on manual manipulations of such lock guard and on the fact that Reed had made a high hitch when he backed his tractor into subject trailer. The evidence indicates that Reed would have made a good hitch if subject kingpin had been anchored in place but that the resulting high hitch was caused by the lock guard pushing up the movable kingpin.

Dealers Transit's second contention is that subject fifth wheel was defective because it was improperly designed so as to conceal an insecure hitch and that Holland Hitch Company failed to warn users of the dangerous propensities of such fifth wheel.

Upon a review of the entire record of this case we conclude that the design of subject fifth wheel with a lock guard to prevent high hitches was sensible and

proper and that the evidence supports the decision of the trial court that the design of subject fifth wheel was not defective and had complied with all warranties. The determinative question in this case is whether the use of subject floating or movable kingpin, that was not anchored in place when in use, in the trucking industry was such that Holland Hitch Company should have known of such use and should have taken this fact into consideration in warning the users of their fifth wheels as to problems that would arise in the use of such kingpin with their fifth wheel.

The evidence established that the use of floating or movable kingpins, as such, was recognized in the trucking industry. The evidence of Holland Hitch Company is that their fifth wheel was designed for a stationary kingpin; that they were aware of floating or movable kingpins on trailers but that such movable or floating kingpins are anchored in place when in use; that they were unaware of any use by a trailer of a floating or movable kingpin that was not anchored in place when in use; and that the design of subject kingpin to the extent that it was not anchored in place when in use was not in accordance with generally accepted engineering principles.

Dealers Transit, Inc. did not present any evidence as to when the floating or movable kingpin that is not anchored in place when in use for truck trailers was first manufactured compared to the date of manufacture of subject fifth wheel or to what extent that such a kingpin is used in the trucking industry other than that Hyster was a well-known make of trailers. However, no evidence was presented as to how many trailers with floating or movable kingpins that were not anchored in place when in use were made by Hyster.

We hold that the tragic accident that occurred in this case was proximately caused by connecting subject floating or movable kingpin that was not anchored in place with subject fifth wheel that was designed for a stationary kingpin. Neither piece of equipment was designed for the other. Dealers Transit and Reed apparently were not aware of this fact. Holland Hitch Company was not aware of the existence of such a kingpin and presented testimony that the design of the subject kingpin was not in accordance with generally accepted engineering standards. This testimony was not rebutted by Dealers Transit.

We hold that a manufacturer of the fifth wheel hitching mechanism for truck tractor is not required to anticipate the manufacture by another of an improperly designed kingpin for a trailer.

We agree with the trial court's implied decision that there was insufficient evidence to establish that Holland Hitch Company, as an expert, should have known of the existence of the Hyster floating or movable kingpin that was not anchored in place when in use and, thus, should have warned users of their fifth wheels as to problems that would arise in the use of such kingpin with their fifth wheel.

Third party plaintiff's third assignment of error is as follows:

"III. The trial court's finding that the injury to appellant was proximately caused by the active negligence of appellant's servant rather than by defects in the product manufactured by appellee is contrary to law as against the manifest weight of the evidence.

"A. The defects in the fifth wheel were the proximate cause of the damage suffered by appellant.

"B. The manifest weight of the evidence, including the testimony of Holland's own expert witness, establishes that the actions of Dealers' driver were not the proximate cause of the accident in which Mr. White was killed.

"C. The trial court's finding that Dealers' driver was actively negligent is against the manifest weight of the evidence."

The part of this assignment of error pertaining to the alleged defects of subject fifth wheel has already been discussed in this opinion and is overruled for the reasons already stated in this opinion.

As to the trial court's finding that subject accident was proximately caused by the active negligence of Reed because he failed to adequately or properly inspect and test the hitch to make certain that it was secure, we sustain this part of subject assignment of error but hold that it does not affect the final decision of this case. We disagree with this finding of the trial court as a basis for the final decision of the trial court but agree with the final decision of the trial court because of our decision to overrule the remaining assignments of error.

We have already held that subject accident was caused because subject kingpin and subject fifth wheel were not designed for each other. When used together, an insecure hitch resulted in the tractor and trailer separating. Reed honestly admitted that he was unaware that this result could happen when a movable kingpin that was not anchored in place was attempted to be engaged with his fifth wheel. The determinative question is whether Reed should have known this fact.

The record of this case indicates that Dealers Transit was not aware of this fact. If they were, they were negligent in not informing Reed of the problem of using his fifth wheel on their trailers with movable kingpins that were not anchored in place.

Reed's experience with stationary kingpins was that a high hitch could be detected by the space between the fifth wheel on the trailer. He looked for this, but there was no such space between his fifth wheel and the trailer. There was no evidence that anyone informed Reed that a high hitch could be made with a movable kingpin which was not anchored in place when in use without such space being present. We hold that under the facts of

this case and his experience, Reed had a reasonable basis to believe that he had made a good hitch. To hold otherwise would be to hold Reed to a higher standard of responsibility than his employer, Dealers Transit, which owned subject trailer.

We are aware that Reed did not notice whether the lower flange of the kingpin was protruding below the locking mechanism when he looked up the throat of his fifth wheel after making his hitch, but he cannot be expected to have the expertise of Dr. Martin to know the significance of the fact of the presence or absence of such lower flange of the kingpin protruding below such locking mechanism. Reed testified that no one told him the significance of such fact, and there is no evidence in this record that an experienced truck driver like Reed should have known the significance of such fact.

Although Reed did not pull subject trailer with its brakes locked, he did pull it forward on its skids which would be a test of the security of the hitch.

Judgment affirmed for the reasons stated in this opinion.

*Judgment affirmed.*

DONOFRIO, P.J., and O'NEILL, J., concur.