Jimmie D. ZEHRING, et al., Plaintiffs,

v.

WICK AGRI–BUILDINGS, et al., Defendants.

Civ. A. C82–1532A.

United States District Court, N.D. Ohio, E.D.

June 18, 1984.

---

Jason A. Blue, Wolske & Blue, Columbus, Ohio, for plaintiffs.

James P. Conroy, Weston, Hurd Fallon, Paisley & Howley, Cleveland, Ohio, Leonard M. Hoffius, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich., Patrick T. Murphy, Wead, Murphy & Hillyer, Bucyrus, Ohio, Daniel W. Hammer, Brett K. Bacon & Stephen F. Gladstone, Thompson, Hine, & Flory, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This diversity action involves Ohio products liability law. Plaintiff Jimmie Zehring's legs were paralyzed in 1980, when he fell twenty feet from a barn roof to the ground after the wooden board supporting him broke. The five defendants whom he blames for the accident contend that the undisputed material facts absolve them of all liability. They move for summary judgment pursuant to Fed.R.Civ.P. 56(c) on Zehring's claims of negligence, strict liability, and breach of warranty, and his wife's claims for loss of consortium. Zehring contends that the existence of disputed material facts precludes any grant of summary judgment. Upon consideration, this Court grants summary judgment on the negligence claim but denies the remainder of the motions.

Subject matter jurisdiction arises under 28 U.S.C. § 1332(a).

### I.

Jimmie D. Zehring and Melissa Zehring, residents of Ohio, commenced this action on June 14, 1982, and subsequently have filed two amended complaints. The Second Amended Complaint, filed on February 4, 1983, alleges that Jimmie Zehring was injured on November 13, 1980, while moving across a two-inch by four-inch by ten-foot pine board, which was manufactured, distributed, and sold by Wick Agri-Buildings ("Wick"), a Wisconsin corporation; Universal Forest ("Universal"), a Michigan corporation; and Northwood Mills, Noranda Mines, Ltd. ("Noranda"), and Northwood Pulp & Lumber Company, Ltd. ("Northwood Pulp"), which are Canadian entities.

Count I, entitled "Negligence", states in part:

4. Defendants negligently failed to execute reasonable care in the materials, workmanship, manufacture, design, handling, distribution, sale and resale of the

board and warn those who would be endangered by the expected and probable use of the board.

Count II, under the heading "Strict Liability in Tort", alleges that:

10. Defendants sold the board identified above in a defective condition unreasonably dangerous to the Plaintiff as a user and consumer, and the board sold was expected to and did reach the Plaintiff as user and consumer without substantial change in the condition in which it was sold.

11. As a direct and proximate result of the Defendants manufacturing, distributing, and selling the defective board, Plaintiff Jimmie D. Zehring suffered the injuries and damages outlined above.

Count III, entitled "Breach of Implied Warranty in Tort", states that:

13. The Defendants, by their manufacture, distribution, and sale of the board, impliedly warranted to the Plaintiffs, as lawful users of the board, that the board was merchantable and fit for ordinary purposes for which it was to be used. At all time [sic] material, Plaintiff used the product in an ordinary and reasonable manner.

14. Defendants breached the above warranty, such breach directly and proximately causing the injuries and damages to Plaintiff as outlined above.

Finally, Melissa Zehring claims that "as a direct and proximate result of the conduct of Defendants, [she] has lost the society, services, support, companionship and consortium of her husband, and expects to lose the same in the future."

The Zehrings demand $1,000,000 in damages.

Neither the original nor the amended complaint makes clear the alleged role of each defendant in causing Zehring's injury. From the record, however, it appears that Wick is the alleged packager or seller of the board and that Universal, Northwood Mills, Noranda, and Northwood Pulp are the alleged manufacturers or distributors of the board. Each defendant has raced to blame the other for any tort committed against Zehring. Wick filed a third-party complaint against Zehring's employer, J & F Construction ("J & F"), and cross-claims against the other four defendants. Universal and Northwood Pulp also filed cross-claims against all four other defendants. And Northwood Mills and Noranda filed a joint cross-claim against Wick, Universal and Northwood Pulp. All third-party claims are for indemnification and/or contribution. Noranda and J & F filed earlier motions for summary judgment, which were denied.

After completing substantial amounts of discovery, all five defendants now have moved for summary judgment. Under Fed.R.Civ.P. 56(c), summary judgment may be granted only if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." All evidence concerning the existence of a genuine issue of material fact must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984); *Malis v. Hills*, 588 F.2d 545 (6th Cir.1978).

## II.

Don Watson of Wick negotiated a Dealership Agreement with J & F in October of 1977, under which Wick "would be responsible for its own defective product, for its own breach of warranties and for its own negligent acts resulting in defective products, regardless of who was injured thereby ..." Wick also contracted to "provide top quality building materials ..." Watson Affidavit ¶¶ 3–4. Wick contends that nowhere in the circumstances surrounding Zehring's injury did it violate either a legal obligation or a contractual duty.

Prior to November 13, 1980, Zehring had erected 200 to 300 pole barns without suffering serious injury. On that date, he worked with Fred Fawley and Jeff Lynn on the Ackerman property in Prospect, Ohio.

Zehring, Fawley and Lynn began by laying out a structure, digging holes, filling them with concrete, and placing wooden poles vertically in the concrete. Wick allegedly supplied the wood. "Penetrated wood" was then placed along the frame. Pine boards called "grids", measuring two inches by six inches, were attached to the side of the barn, parallel to the ground and perpendicular to the poles, in order to hold the poles in place. Following J & F's usual practice, Fawley checked the boards for imperfections as he handed them to the other workers. None of the workers recall any boards being discarded and, again in conformity with the company's usual practice, none of the pine boards were rejected merely because they contained knots.

After the poles were connected with the grids, the workers began work on the roof. The structure was aligned in conformity with the plans, and trusses were set on top of the poles, then nailed and bolted into place. The next step was to use "purlins", two-inch by four-inch by ten-foot boards, to connect the trusses. The purlins, in turn, would support the sheet metal and insulation that were to comprise the roof. Perched approximately twenty feet off the ground, Zehring and Lynn first attached the lowermost purlins, then proceeded towards the apogee of the roof, placing purlins approximately two-feet apart and moving across the purlins to reach other trusses on the frame. Zehring had placed purlins about half the distance from the eave of the roof to the peak when the accident occurred.

Zehring testified that he used a "bear crawl" to move across the purlins. He would place his hands on the top purlin and place his feet on the next one down (two down from where his hands were). While moving sideways across the purlins in this fashion, and while located halfway between two trusses, Zehring heard the purlin between his feet crack. The wood broke straight through, and Zehring fell to the ground, suffering the paralyzing injuries described above. Zehring Deposition at 48, 68–69.

J & F apparently disposed of the broken board after the accident. During discovery, Zehring did not obtain the board or perform tests on any other board manufactured, distributed or sold by any of the defendants. Instead, he relies on his deposition testimony that, in the course of building several hundred barns, he and co-workers had crossed purlins using a "bear crawl" several thousand times without ever having a board crack or break, and on an affidavit supplied by an expert in wood science. The affidavit states in pertinent part:

I, John F. Senft, being duly sworn hereby state:

1. I am a Wood Technologist and Associate Professor of Wood Science at Purdue University, Department of Forestry and Natural Resources, West Lafayette, Indiana and ... I have a Ph.D. in wood science.

2. Further, my present general research area is in the mechanical strength properties of wood and I am familiar with the grading of lumber and the standards applicable to lumber used in wooden construction including the strength ratios approved by the American Society for Testing and Materials.

3. That the minimum weight that the one and one half (1½) inch face of a grade one (1) or two (2) 2″ × 4″ × 10′ board with a one and one half (1½) knot at or near the center should support according to strength ratios approved by the American Society for Testing and Materials is in excess of 250 pounds for species spruce pine fir (S.P.F.).

4. That a grade one (1) or two (2) 2″ × 4″ × 10′ board species spruce pine fir consistent with that used in residential construction should support a 170 pound man crossing laterally on a 2″ × 4″ × 10′ board with his feet on the one and one half (1½″) inch face of the board and the board on edge and supported at or near either end.

5. That species spruce pine fir is designated on 2″ × 4″ × 10′ boards with the initials "S.P.F.".

6. That a defect can exist in a grade one (1) or two (2) 2″ × 4″ × 10′ board and not be apparent to an individual untrained to observe the defect.

### III.

#### A. *Negligence*

■ In Ohio, "in order to establish actinable negligence, one seeking recovery must show the existence of a duty, the breach of a duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 423 N.E.2d 467, 467 (1981); *Hupp v. United States*, 563 F.Supp. 25, 30 (S.D.Ohio 1982).

■ Zehring may be able to establish the duty owed to him by Wick and the other defendants, for in this area theories of negligence and strict liability have largely merged. "It is ... apparent that the rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort resulting from a failure to meet this duty is, in essence, a negligent act.... In Ohio, the case law has established that a manufacturer or vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267, 272–73 (1977) (citations omitted); *Gossett v. Chrysler Corp.*, 359 F.2d 84, 87 (6th Cir.1966). In addition, "[a] supplier is subject to liability for the damages proximately caused by the use of its product for any reasonable purpose if it fails to exercise ordinary care to give the user information which it has and which it should realize would be necessary to make the use of the product safe." *Hargis v. Doe*, 3 Ohio App.3d 36, 443 N.E.2d 1008, 1009 (Montgomery County 1981) (syllabus).

■ But the undisputed facts indicate that Zehring cannot demonstrate that the defendants failed to warn him of a latent defect or failed to provide him with information necessary to make use of the purlin safe. There is no evidence that any defendant knew the board was defective; such knowledge cannot be implied from the mere fact of injury. "The court, in determining whether there is a duty to warn, must consider whether the injuries were foreseeable. It must consider whether it is reasonable to expect that such an injury would occur, not whether it is remotely possible that such injury would occur." *White v. Dealers Transit, Inc.*, 4 Ohio App.3d 40, 446 N.E.2d 460, 466 (Mahoning County 1980) (citation omitted). The undisputed facts indicate that no jury properly could find that any defendant should reasonably have expected a defect in the board to injure Zehring. Under the negligence standard enunciated in *Temple v. Wean United, Inc.*, the defendants must be awarded summary judgment on Count I.

#### B. *Strict Liability/Breach of Warranty*

Counts II and III of the Second Amended Complaint essentially state the same cause of action. As Chief Justice Celebrezze noted in *Temple v. Wean United, Inc.*, "there are virtually no distinctions between Ohio's 'implied warranty in tort' and the Restatement version of strict liability in tort ..." 364 N.E.2d at 267. The two counts will therefore be analyzed together.

In *Temple*, the court adopted the strict liability standard set forth in Restatement (Second) of Torts § 402A. The syllabus by the court states:

1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

2. The rule above applies although the seller has exercised all possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In its opinion, the court stated that:

> It is now well established that, in order for a party to recover based upon a strict liability in tort theory, it must be proven that: "(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." ... Under Ohio law, a defect is considered to exist in a product which is not "of good and merchantable quality, fit and safe for ... [its] ordinary intended use."

364 N.E.2d at 270 (citations omitted). Indeed, the court specifically held that "[u]nder Section 402A, as well as under our case law, a plaintiff must prove that the product was defective at the time it left the seller's hands." *Id.* at 271. In subsequent cases, the court has applied the rule of strict liability to design cases, *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568, 570–71 (1981); *Cremeans v. International Harvester Co.*, 6 Ohio St.3d 232, 452 N.E.2d 1281 (1983), and has redefined "defect" so that "[a] product is in a defective condition unreasonably dangerous to the user if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814 (1982) (syllabus).

But, while expanding the scope of strict liability, the court has explicitly declined to adopt a rule whereby "summary judgment for a defendant would never be possible since the plaintiff need only assert that a given product is defectively designed and that he was injured by it." *King v. K.R. Wilson Co.*, 8 Ohio St.3d 9, 455 N.E.2d 1282, 1283 (1983), quoting *Cremeans v. International Harvester Co.*, 452 N.E.2d at 1281 (Holmes, J., dissenting). Instead, the court has held that Ohio's equivalent of Fed.R.Civ.P. 56(e) requires a plaintiff to provide affidavits or other evidence establishing disputed issues of material fact in order to defeat a summary judgment motion.

■ The ultimate question before this Court, then, is whether Zehring's deposition testimony and the Senft affidavit together create a material factual dispute over whether the broken board was defective, and therefore satisfy the *Temple* mandate that "a plaintiff must prove that the product was defective at the time it left the seller's hands." 434 N.E.2d at 271. Under Ohio law, "[a] defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence." *Friedman v. General Motors Corp.*, 43 Ohio St.2d 209, 331 N.E.2d 702 (1975) (syllabus); *State Auto Mutual Ins. Co. v. Chrysler Corp.*, 36 Ohio St.2d 151, 304 N.E.2d 891 (1973); *Nash v. General Electric Corp.*, 64 Ohio App.2d 25, 410 N.E.2d 792, 794 (Claremont County 1979). In his response to the summary judgment motions, Zehring argues that:

> Dr. Senft's Affidavit ..., coupled with the fact that Jimmie Zehring and his co-workers had crossed purlins in the construction of over two hundred (200) Wick Agri-Building barns in the same manner without incident makes it clear that the board in question was not of the grade and quality called for by the standards of the Wick Agri-Building dealer contract.... There are mathematically definable strength standards for lumber and they are specific as to grade. It is not necessary for Plaintiffs to provide the board in order to establish that it did not measure up to those standards.

Brief at 5–6.

■ In essence, Zehring's contention is that Dr. Senft's affidavit creates a disputed material fact as to whether any two-inch by four-inch by ten-foot board that does not support a 170-pound man is defective, while the plaintiff's deposition creates a disputed material fact as to whether any purlin

which, unlike its predecessors on more than 200 other barns, failed to hold his weight must have been defective. Combining the liberal standards of the Ohio cases permitting proof of defects by circumstantial evidence with the requirements of Fed.R. Civ.P. 56(c) that this court view all facts most favorably to the non-movant, the motions for summary judgment with respect to Counts II and III must be denied. Since Count IV derives from Counts II and III, the motions are denied with respect to it as well. Finally, several of the defendants have submitted cursory motions for summary judgment on the cross-claims. As these motions also fail to satisfy the requirements of Fed.R.Civ.P. 56(c), they too are denied.

### IV.

The plaintiffs have submitted sufficient evidence to escape termination of their case before trial. However, in light of the complicated liability and damages questions that a trial of this case on the merits will involve, the parties are strongly urged to enter into serious settlement discussions. Counsel and representatives possessing full authority to settle this case and are to appear as scheduled for a pretrial conference on Wednesday August 1, 1984, at 5:00 P.M.

IT IS SO ORDERED.