[Cite as *L.L.L. v. Junies*, 2014-Ohio-141.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

L.L.L.                                              :

     Plaintiff-Appellee                      :   C.A. CASE NO.    2013 CA 31

v.                                                 :   T.C. NO.    12SP85

TERRY A. JUNIES                                    :   (Civil appeal from Common
                                                       Pleas Court, Domestic Relations)
     Defendant-Appellant                     :

                                                   :

. . . . . . . . . .

# O P I N I O N

Rendered on the ___17th___ day of ___January___, 2014.

. . . . . . . . . .

MATTHEW D. BROWN, Atty. Reg. No. 0081510, 42 Woodcroft Trail, Suite D, Beavercreek, Ohio 45430
     Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 2372 Lakeview Drive, Suite H, Beavercreek, Ohio 45431
     Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Terry A. Junies appeals a decision of the Greene

County Court of Common Pleas, Domestic Relations Division, overruling his objections to the magistrate's decision and issuing a Civil Sexually Oriented Protection Order pursuant to R.C. 2903.214(C)(1). Junies filed a timely notice of appeal with this Court on June 6, 2013.

{¶ 2} The record establishes that Junies first met the victim, defendant-appellee L.L.L. ("L."), at the Vineyard Church, where they both attended and where Junies was assisting with the religious education of high school students. Junies and L. began dating in July of 2012. In early September of 2012, Junies moved into L.'s residence with her and her children. After approximately five weeks, Junies moved out of L.'s residence on October 12, 2012.

{¶ 3} After discovering that Junies left some personal possessions in her residence, L. contacted him and proposed a meeting at the Starbucks coffee shop in Oakwood, Ohio, on October 17, 2012, in order to return his property to him. The parties met as planned, and Junies invited L. back to his new apartment for a tour. L. agreed, and the two traveled back to Junies' nearby apartment.

{¶ 4} At some point after they arrived, Junies locked the door to his apartment. Before leaving, L. went upstairs to use the bathroom. When she came down, Junies gave L. a hug goodbye. The hug led to fondling, which eventually led to sexual intercourse. L. testified that the sexual intercourse was non-consensual. L. testified that she repeatedly told Junies to stop, and that he manipulated and coerced her into having sex. Conversely, Junies testified that the sex was consensual and that he did not intend to lock L. into his apartment. Rather, he simply locked his door out of habit when he entered his apartment because the door would not close completely unless it was locked. After the sexual encounter, Junies

allowed L. to leave the apartment, and she immediately went home but did not contact the police regarding the incident.

{¶ 5} Approximately two weeks later, L. met with her friend, K.J., to discuss the incident. Sometime in November of 2012, L. met with several members of her church and described the incident. At the urging of her friends, L. decided to report the incident to the police. The police subsequently contacted Junies, and he provided a written statement detailing his version of the incident. We note that no criminal charges were ever filed against Junies regarding the incident.

{¶ 6} On December 20, 2012, L. filed a Petition for a Civil Sexually Oriented Offense Protection Order against Junies. On the same day, the magistrate granted L. an ex parte protection order against Junies. On January 25, 2013, a hearing was held before the magistrate regarding L.'s pending petition. L. was represented by counsel at the hearing, but Junies chose to proceed pro se. The magistrate granted L.'s petition in a judgment entry filed on January 29, 2013. Junies filed a timely objection to the magistrate's decision. On May 7, 2013, the trial court overruled Junies' objection and adopted the magistrate's decision.

{¶ 7} It is from this judgment that Junies now appeals.

{¶ 8} Junies' sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ADOPTED THE MAGISTRATE'S DECISION GRANTING A PROTECTION ORDER WHEN THE EVIDENCE PRESENTED WAS NOT SUFFICIENT TO ESTABLISH A SEXUALLY ORIENTED OFFENSE.

{¶ 10} In his sole assignment, Junies contends that the evidence adduced at the hearing on L.'s petition was insufficient to establish by a preponderance of the evidence that he committed a sexually oriented offense against her on October 17, 2012.

{¶ 11} Pursuant to Civ.R. 53(D)(3)(b), a party who disagrees with a magistrate's proposed decision must file objections to said decision. Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. *Breece v. Breece*, 2d Dist. Darke No. 99-CA-1491, 1999 WL 999759 (Nov. 5, 1999); *Seagraves v. Seagraves*, 2d Dist. Montgomery Nos. 15047 and 15069, 1995 WL 559970 (Aug. 25, 1995). In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2d Dist.1996). Thus, the trial court's standard of review of a magistrate's decision is de novo.

{¶ 12} An "abuse of discretion" standard is the appellate standard of review. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. *Proctor v. Proctor*, 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287 (3d Dist.1988). Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard. *Whiting*, supra.

> "Abuse of discretion" has been defined as an attitude that is
> unreasonable, arbitrary or unconscionable. (Citation omitted.) It is to be

expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 13}** R.C. 2903.214(C)(1) provides for the issuance of a protection order to protect those individuals who demonstrate that another has committed a sexually oriented offense against their person. R.C. 2950.01(A)(1) lists a number of charges, including rape, which fall under the definition of a "sexually oriented offense." R.C. 2907.02. "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

**{¶ 14}** When assessing whether a protection order should have been issued pursuant to R.C. 2903.214, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief. *Lane v. Brewster,* 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290, ¶ 50; *Olenik v. Huff,* 5th Dist. Ashland No. 02-COA-058, 2003-Ohio-4621, ¶ 16-18. Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v.*

*Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 15}   In the instant case, L. testified that when she entered Junies apartment on the evening of October 17, 2012, he immediately locked the door, thus preventing her exit.   L. further testified that when she did attempt to leave his apartment, Junies asked for a hug before she left.   When L. hugged Junies, he began to grope and fondle her, ultimately pulling down her pants and underwear despite her protests.   Even after she repeatedly refused his sexual advances and asked him to stop, Junies forced himself upon L. and had sexual intercourse with her.   The trial court credited L.'s testimony over that of Junies, and we must defer to the credibility determination made by the magistrate and adopted by the trial court.   We agree with the trial court that the testimony of L., when deemed credible, was sufficient to establish by a preponderance of the evidence that Junies committed a sexually oriented offense.   Accordingly, the trial court did not err when it overruled Junies' objection and adopted the magistrate's decision granting L.'s Petition for a Civil Sexually Oriented Offense Protection Order.

{¶ 16}   Junies' sole assignment of error is overruled.

{¶ 17}   Junies' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

Matthew D. Brown
Thomas M. Kollin
Hon. Steven L. Hurley