[Cite as *Charles v. Peters*, 2016-Ohio-1259.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| CARLA A. CHARLES | : | |
| | : | Appellate Case No. 2015-CA-52 |
| Petitioner-Appellant | : | |
| | : | Trial Court Case No. 12-DV-162 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| JOHN J. PETERS | : | Court, Domestic Relations) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2016.

. . . . . . . . . .

JENNIFER E. MARIETTA, Atty. Reg. No. 0089642, 77 West Main Street, Xenia, Ohio 45385
    Attorney for Petitioner-Appellant

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
    Attorney for Respondent-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Petitioner-appellant Carla A. Charles appeals from an order of the Greene County Common Pleas Court, Domestic Relations Division, overruling her motion to

extend an Agreed Domestic Violence Protection Order for an additional two years. Charles argues that the trial court abused its discretion by refusing to adopt the Magistrate's decision sustaining the motion, and that the evidence is sufficient to support the factors required to obtain a protection order.

{¶ 2} We conclude that the trial court did not abuse its discretion in sustaining the objections to the Magistrate's order. We conclude that the order of the trial court overruling the motion to extend the protection order is not against the manifest weight of the evidence. Consequently, the order from which this appeal is taken is Affirmed.

## I. The Relationship of the Parties

{¶ 3} John Peters is the father of Charles's nine-year-old daughter. Charles has sole custody of their daughter pursuant to an order of the Greene County Juvenile Court. Peters exercises visitation with his child at the Greene County Visitation Center.

{¶ 4} At the hearing, Charles testified to six incidents that caused her to live in fear, "afraid of what actions [Peters] has done and what he is going to do." Transcript at 15. First, Charles testified that she believed it was Peters who entered her garage and stole a copy of the protection order from her car, and left a single flower from her garden. She admitted that no one saw Peters enter her garage, and that the incident occurred more than a year prior to the filing of her petition to extend the order. Second, Charles testified that she believes Peters entered her home, when she was not present, based on her observation that the back door was left ajar, and a cigarette butt was left behind. She admitted that no one saw Peters enter her home, and that the incident occurred more than a year prior to the filing of her petition to extend the order. Third, Charles testified that a key to her home was missing from her daughter's backpack, after her daughter left

her backpack at the home of Peters's sister, where supervised visitation had occurred. Charles had no other evidence from which to conclude that Peters was responsible for, or in possession of, the missing key. Fourth, Charles testified that her neighbor saw Peters's car parked in her driveway, when she was not home. Charles attempted to introduce a photograph of the car in her driveway, but could not establish when the photo was taken. Fifth, Charles testified that she found two documents, written on the type of yellow carbon paper used by the Greene County Visitation Center. The first document was found on the service door to her home garage, and it stated, "Time is running out." The second document was a drawing her daughter brought home from the visitation center that contained a drawing of a tombstone, with the words "Mom," and "R.I.P." She testified that it was not a child's handwriting. Sixth, Charles testified that she received a phone call from Peters's sister, and could hear Peters yelling in the background. Charles testified that since the initial protection order was issued, she has had no personal contact with Peters, with the exception of seeing him once at the visitation center. Charles testified that she has filed several police reports to complain that Peters was violating the protection order, but the police have never charged Peters with any offense as a result of her complaints.

{¶ 5} Peters testified that the last time he was at Charles's residence was in 2012. He denied leaving her any notes, sending her any messages, making any drawings, or having any desire to see Charles. Peters acknowledged that the photograph Charles attempted to introduce into evidence did depict the car he owned for 7 or 8 years, and that he did drive it to her house many times before the protection order was issued, in 2012. Peters testified that he has never seen Charles at the visitation center. Peters

denied committing any act of domestic violence toward Charles, and explained that he only entered into the consent agreement in 2012 in order to obtain visitation with his daughter. Peters testified that he has not been charged with any criminal offense in the past five years.

## II. The Course of Proceedings

{¶ 6} In October 2012, Charles petitioned for a Domestic Violence Protection Order against Peters, alleging that Peters had verbally threatened her. Peters and Charles entered into a Consent Agreement, and an agreed Domestic Violence Protection Order was issued. The order specified a term of two years, with an expiration date of December 21, 2014. The child is not designated as a protected person under the terms of the Protection Order. The order prohibits Peters from abusing Charles by harming, attempting to harm, threatening, following, stalking, harassing, forcing sexual relations upon, or by committing sexually oriented offenses against, her. Peters was also prohibited from entering Charles's home, business, or place of employment, including the buildings, grounds or parking lots. Peters was required to stay at least 500 feet away from Charles, wherever she may be found. Peters was prohibited from having any contact with Charles, including any text, e-mail, writings or other communication. Peters was also prohibited from causing or encouraging any other person from doing anything prohibited by the order. The protection order recognized that Peters has certain limited rights to visitation with the child.

{¶ 7} Shortly before the Protection Order was scheduled to expire, Charles moved to modify the terms of the consent agreement, seeking to extend the order for an additional two years. The motion specified as grounds, "continued fear of the respondent

due to ongoing stalking, harassment by both the respondent and a family member of respondent, threatening notes/writings and verbal threats made by respondent through another person. Incident reports of suspected violations were filed with the City of Xenia Police Department and the Greene County Sheriff." A hearing on the motion to modify the consent order was set before the court's magistrate. A magistrate's order was issued, extending the protection order for three months, for "good cause shown," without identifying whether any evidence was presented or considered. The magistrate conducted a second hearing, and then issued a modified order extending the protection order for an additional two years. The magistrate's order did not include any findings of fact or conclusions of law. The magistrate's order does not state who testified at the hearing, or what evidence was presented or considered to meet the factors required by statute or upon which to judge the witnesses' credibility. Initially, the trial court approved the magistrate's order, but reconsidered after Peters filed objections, and Charles responded to the objections. The trial court reviewed the transcript of the hearing, and rendered a decision sustaining the objections and vacating the protection order upon the ground that the petitioner had not met her burden of proving the elements required by R.C. 3113.31 for the issuance of a domestic violence protection order. From the order overruling the motion to extend the protection order, Charles appeals.

### III. Standard of Review

{¶ 8} This court has applied an abuse-of-discretion standard in reviewing a trial court's decision whether to grant or terminate a civil protection order. *Sweet v. Hunt*, 2d Dist. Greene No. 2013-CA-37, 2014-Ohio-631, ¶¶ 13-14. *Brown v. Naff*, 2d Dist. Miami No. 2011-CA-17, 2012-Ohio-1770, ¶ 9. *See also Walker v. Edgington*, 2d Dist. Clark No.

07-CA-75, 2008-Ohio-3478, ¶ 24; *Bryant v. Spear-Hardy*, 2d Dist. Montgomery No. 23449, 2010-Ohio-1903, ¶ 23. While Charles argues that the standard of review in this appeal should be based on a determination whether the order overruling her motion to modify the protection order is based on sufficient evidence, Peters assumes that the standard of review is whether the trial court abused its discretion.

**{¶ 9}** We have joined other districts in recognizing a distinction between challenges to the scope or terms of a protection order and whether a protection order should issue at all or should be extended, in which case, our review is based on whether there is "sufficient competent, credible evidence" to support a finding that the respondent engaged in acts or threats of domestic violence. *Young v. Young*, 2d Dist. Greene No. 2005-CA-19, 2006-Ohio-978, ¶ 22. *See also Schneider v. Razek*, 2015-Ohio-410, 28 N.E.3d 591, ¶ 29-40 (8th Dist.); *Abuhamda-Sliman v. Sliman*, 161 Ohio App. 3d 541, 2005-Ohio-2836, 831 N.E. 2d 453, ¶ 8-10 (8th Dist.).

**{¶ 10}** A protection order, or an order extending a protection order, requires sufficient evidence. By contrast, no evidence is required to support an order overruling a motion for a protective order, or a motion to extend a protection order. In a hypothetical proceeding on a motion to extend a protection order in which no evidence is presented, the trial court would be required to overrule the motion. We conclude, therefore, that in reviewing an order overruling a motion to extend a protection order, the standard of review is not whether there is sufficient evidence to support the order of the trial court overruling the motion (no quantum of evidence is required for that order), but whether that order is against the manifest weight of the evidence. Under the manifest-weight-of-the-evidence standard the appellate court must review the entire record, weigh the evidence and all

reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice. *Folck v. Redman*, 2d Dist. Clark No. 2013-CA-35, 2013-Ohio-3646, ¶ 8. In *Eastley,* the court also stressed that

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

(Citations omitted.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

**{¶ 11}** We have also established that an abuse-of-discretion standard is to be applied upon appellate review of a trial court's decision to adopt, modify or vacate the order of the trial court's magistrate. *L.L.L. v. Junies,* 2d Dist. Greene No. 2013 CA 31, 2014-Ohio-141, ¶ 12, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60–61, 548 N.E.2d 287 (3d Dist.1988). A court abuses its discretion by acting in a manner that is unreasonable, arbitrary or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). Decisions are unreasonable if they are not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**IV. The Trial Court Did Not Abuse its Discretion to Vacate the Magistrate's Order**

**{¶ 12}**  For her First Assignment of Error, Charles asserts as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN SUSTAINING RESPONDENT'S OBJECTIONS AND DENYING PETITIONER'S MOTIONS FOR MODIFICATION/EXTENSION OF THE CIVIL PROTECTION ORDER.

**{¶ 13}**  Charles argues that the trial court abused its discretion by refusing to adopt the magistrate's decision to grant the extended protection order.  When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. *New Lebanon v. Krahn*, 2d Dist. Montgomery No. 26659, 2015-Ohio-4791, ¶ 86, citing *Breece v. Breece,* 2d Dist. Darke No. 99-CA-1491, 1999 WL 999759 (Nov. 5, 1999); *Seagraves v. Seagraves,* 2d Dist. Montgomery Nos. 15047 and 15069, 1995 WL 559970 (Aug. 25, 1995). In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2d Dist.1996).

**{¶ 14}**  An appellate court reviews a trial court's decision to adopt, modify, or vacate a magistrate's decision for an abuse of discretion, and that decision will only be reversed where it appears that the trial court's actions are arbitrary or unreasonable. *L.L.L. v. Junies*, 2d Dist. Greene No. 2013 CA 31, 2014-Ohio-141, ¶ 12, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60–61, 548 N.E.2d 287 (3d Dist.1988). Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the

magistrate's findings or proposed decision. *Howard v. Wilson,* 186 Ohio App.3d 521, 2010-Ohio-1125, 928 N.E.2d 1180, ¶ 8 (2d Dist.).

{¶ 15}  In its consideration of the objections to the magistrate's decision, the trial court reviewed the transcript, correctly applied the law, and concluded that the evidence did not prove the statutory requirements for a domestic violence protection order.  We conclude that the trial court did conduct an independent de novo review and did not err in entering its own judgment.

{¶ 16}  Charles's First Assignment of Error is overruled.

## V. The Trial Court's Judgment Is Not Against the Manifest Weight of the Evidence

{¶ 17}  For her Second Assignment of Error, Charles asserts:

THE MAGISTRATE CORRECTLY FOUND THAT THERE WAS SUFFICIENT CREDIBLE EVIDENCE AND THAT BY A PREPONDERANCE OF THE EVIDENCE, RESPONDENT COMMITTED A VIOLATION OF R.C. 2903.211 AND A CIVIL PROTECTION ORDER WAS EXTENDED.

{¶ 18}  Charles argues that the trial court erred by failing to find sufficient evidence to support the issuance of the protection order. Although Charles admits that she did not present direct evidence that Peters was responsible for any of the incidents that caused her to fear him, Charles argues that she presented sufficient evidence to create an "assumption" that it is more likely than not that Peters perpetrated the conduct. We recognize that the trial court, as the trier of fact, is entitled to make reasonable inferences, not assumptions, from the facts shown with direct proof, but an "inference cannot be based upon evidence that is too uncertain or speculative or which raises merely a

conjecture or possibility." *Haughey v. Twins Group, Inc.*, 2d Dist. Champaign No. 2004-CA-7, 2005-Ohio-1371, ¶ 30, citing 20 American Jurisprudence, 169, Section 165. In the case before us, it was not only disputed that Peters was the perpetrator of the incidents upon which Charles based her claim, it was also a disputed question of fact as to whether those actions could reasonably have led Charles to believe that she was in imminent danger of domestic violence.

{¶ 19} We have recently discussed the evidence necessary to meet the requirements of the domestic violence statute for a protection order:

> Under R.C. 3113.31(E)(1), a court may grant a protection order to "bring about a cessation of domestic violence." When a trial court grants a protection order, it must find that the "petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), at paragraph two of the syllabus. Domestic violence is defined in pertinent part by R.C. 3113.31(A)(1) as "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code".

*Barton v. Barton*, 2d Dist. Greene No. 2014-CA-21, 2015-Ohio-3869, ¶ 7.

{¶ 20} Therefore, a petitioner seeking a domestic violence protection order must produce evidence to meet the factors set forth in one of three statutes; R.C. 3113.31(A)(1), R.C. 2903.211, or R.C. 2911.211. Under the first statutory grounds, R.C. 3113.31(A)(1), Charles must prove by the preponderance of the evidence that (a)

petitioner has a reasonable belief that she was in fear of imminent serious physical harm, (b) as a direct result of the respondent's force or threat of force. R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." With regard to imminence, this court has previously held that because civil protection orders are intended to prevent violence before it happens, imminence does not require an offender to carry out a threat immediately or to be in the process of carrying it out. *Young v. Young*, 2d Dist. Greene No. 2005-CA-19, 2006-Ohio-978, ¶ 105. Instead, "the critical inquiry under the statute is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. This inquiry necessarily involves both subjective and objective elements. * * * Therefore, we must determine whether [the petitioner] * * * had a reasonable belief that * * * [the offender] would cause her imminent, serious physical harm." *Id.* at ¶ 106.

{¶ 21} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following: "(a) any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) any physical harm that carries a substantial risk of death; (c) any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; or (e) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶ 22} In the case before us, Charles did not present sufficient evidence from

which any reasonable trier of fact could find that Charles was placed, by force or threat of force, in fear of imminent serious physical harm from any action of Peters. There was no evidence that Peters ever engaged in any act of violence, or ever made any specific threat of violence. Charles did not present sufficient, credible evidence to meet the statutory factors required under R.C. 3113.31(A)(1).

{¶ 23} The second ground for a protection order is set forth in the menacing by stalking statute, R.C. 2903.211, which requires a petitioner to produce evidence to establish that (a) respondent has engaged in a pattern of conduct to knowingly cause the petitioner (b) to have a reasonable belief that the respondent will cause her physical harm or mental distress. R.C. 2901.22(B) provides that a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." "As to whether the offender engaged in the conduct at issue in order to 'cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person,' the State need not prove that the offender explicitly threatened the victim." *State v. Smith,* 9th Dist. Summit No. 25869, 2012–Ohio–335, ¶ 20. "Instead, the offender's knowledge that the conduct will result in the victim fearing physical harm or suffering mental distress can be inferred by the circumstances." *Id.* Pursuant to R.C. 2901.01(A)(3), physical harm includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Mental distress" is defined in R.C. 2903.211(D)(2) as:

(a) Any mental illness or condition that involves some temporary substantial incapacity; [or]

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶ 24} In the case before us, the trial court's order is not against the manifest weight of the evidence. Charles contends that her testimony regarding a missing key, an open back door, an anonymous note and a drawing was sufficient to give rise to an inference that Peters was engaging in a pattern of conduct for the purpose of causing her harm. But although a finder of fact is permitted to draw reasonable inferences from proven facts, it is not required to do so. OJI-Civil, 305.01(5). *Nash v. General Electric Company*, 64 Ohio App.2d 25, 28, 410 N.E.2d 792 (1st Dist. 1979).

{¶ 25} The third ground for a domestic violence protection order is based on the Trespass statute, R.C. 2911.211, which provides, "No person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him." Therefore, to obtain a protection order on the basis of a violation of R.C. 2911.211, Charles was required to prove by the preponderance of the evidence that (a) Peters trespassed on her property, (b) causing physical harm, or (c) to cause Charles to believe that he would cause physical harm to her. *See, e.g., Bach v. Crawford*, 2d Dist. Montgomery No. 19531, 2003-Ohio-1255, ¶ 22. Again, the order of the trial court is not against the manifest weight of the evidence. At most, Charles presented evidence from which the trial court was permitted to draw an inference that Peters trespassed on her

property. But the trial court was not required to draw that inference.

{¶ 26} We conclude that the trial court's order overruling the motion to extend the protection order is not against the manifest weight of the evidence. There was no evidence of any physical contact between the parties for more than three years. There was no evidence of a past or present history of domestic violence. None of the incidents involved a threat of physical harm.

{¶ 27} Charles's Second Assignment of Error is overruled.

## VI. Conclusion

{¶ 28}  Both of Charles's assignments of error having been overruled, the order of the trial court overruling her motion to extend the protection order is Affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.


Copies mailed to:

Jennifer E. Marietta
David M. McNamee
Hon. Steven L. Hurley