[Cite as *Griffey v. Riverside Commons Condominium Unit Owners' Assn.*, 2020-Ohio-4363.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Patricia Griffey, et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 19AP-681 |
| v. | : | (C.P.C. No. 18CV-4098) |
| Riverside Commons Condominium Unit Owners' Association, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on September 8, 2020

**On brief:** *Mazanec, Raskin & Ryder Co., L.P.A., Doug Holthus,* and *Cara M. Wright,* for appellants. **Argued:** *Cara M. Wright.*

**On brief:** *Gallagher, Gams, Tallan, Barnes & Littrell, LLP, M. Jason Founds,* and *Robert J. Kidd*, for appellees. **Argued:** *Robert J. Kidd.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Some months after defective gutters and downspouts for their unit at the Riverside Commons Condos were fixed, James and Patricia Griffey sued the Condominium Unit Owners' Association over claimed foundation and siding damages they said had arisen from the gutter problems. *See, e.g.,* Appellants' Brief at 7-8 ("There is no dispute that repairs were * * * undertaken by the Association to correct the deficiencies in the gutters and downspouts. However, the significant damage resulting from the improperly installed gutters and downspouts, such as the damage related to the water intrusion and damage to the block foundation wall, were not repaired by the Association."). After a bench trial, the trial court ruled against them, finding that "Plaintiffs failed to prove any resulting damages"

from the now remedied gutter problem: "Notably, neither [the Griffeys' certified remodeler who inspected the premises nor the Association's structural engineering expert] testified that problems exist behind the siding and/or that the foundation will require repair." Sept. 5, 2019 Decision Following Bench Trial at 3. The Griffeys establish no error with the trial, and we will affirm the judgment of the trial court.

{¶ 2} Apparently when the gutters and downspouts were replaced following weather damage in 2010, gutters of the wrong size were installed. The Griffeys made various complaints, including in February of 2017 to condo management agent representative Kandace Watkins (who was informed by Ms. Griffey, in their first contact since Ms. Watkins began her work in June 2016, "that she was having a problem with her gutter and she suspected some structural issues"). *See* Tr. at 101. In response, the management agent had a gutter extender installed in March 2017. *Id.* at 101-02. That repair proved ineffective. Asked at trial by the Griffey's counsel: "And so the board undertook to put in new gutters with larger dimensions, correct?" Ms. Watkins answered, "Correct." *Id.* at 93.

{¶ 3} The September 2017 gutter replacement followed recommendations for replacement from both the Griffey's expert, Master Certified Remodeler Peter Robinson (who visited in April 2017 and provided a May report), and the Association's structural engineering expert, David Holtzapple (who followed up his July structural inspection with an August 2017 letter). But whereas Mr. Robinson had noticed "dampness" and "tremendous humidity" in a crawlspace and detected what he saw as signs of deterioration to a foundation wall, *see* Tr. at 116-17, Mr. Holtzapple had reported that "[t]he crawlspace was dry and did not smell damp," and that there were no structural problems with the foundation, *see id.* at 268-70 and Def. Ex. B., Aug. 18, 2016 Holtzapple letter. Beyond the gutter replacement, Mr. Holtzapple's report recommended no structural changes, and Mr. Robinson's recommended that rear siding be removed and inspected for mold, rot, or insect damage.

{¶ 4} The Griffeys sued the Association on May 16, 2018, alleging negligence, breach of warranty, breach of fiduciary duty, and breach of contract. In due course, and supported by affidavits from Mr. Robinson and Ms. Griffey, they filed a summary judgment motion; the Association's opposition invoked Mr. Holtzapple's inspection and attached an

affidavit from him authenticating his August 18, 2017 letter, along with an affidavit from Ms. Watkins. The Griffeys in reply protested that the Association had not named those witnesses within the deadlines specified by local rule or during discovery; they argued that any testimony from Mr. Holtzapple or Ms. Watkins be excluded from consideration. Mar. 21, 2019 Reply at 1-2.

{¶ 5} The Association then sought leave to disclose its witnesses. Mar. 27, 2019 Motion for Leave to File Disclosure of Witnesses Out of Rule, Instanter. The Association asserted that it had "prepared the Initial Disclosure of Witnesses for this case on October 1, 2018," but, "due to a clerical error, the disclosure was not filed with the Court"; the Association's lawyer had realized the error only upon receiving the Griffeys' Reply. *Id.* at 2. The Association argued that the untimely disclosure of Ms. Watkins and Mr. Holtzapple would not unfairly prejudice the Griffeys because both witnesses were "well-known" to Ms. Griffey. *Id.* She herself had "disclosed a representative of [the Association] in her disclosure," and Ms. Watkins was the person with whom she "ha[d] communicated in dealing with the Association [regarding] these issues." *Id.* Moreover, Mr. Holtzapple's August 18, 2017 report had been "previously provided to the Plaintiff over a year and a half [earlier] and discussed in correspondence between [the parties' counsel] as far back as December 29, 2017 and as [recently] as December 28, 2018." *Id.* Trial was months away, and the Association offered to "make the witnesses available for deposition forthwith." *Id.* at 2-3.

{¶ 6} The Griffeys opposed the Association's motion for leave, saying it was "patently false" that they had not been prejudiced because discovery had closed and they had relied "upon the witnesses who had been disclosed and the discovery responses (or really, the lack thereof)" in drafting the motion for summary judgment. Apr. 2, 2019 Plaintiffs' Combined Brief in Opposition at 3.

{¶ 7} The trial court promptly granted as "well taken" the motion for leave to disclose witnesses. Apr. 4, 2019 Decision at 4. After considering the parties' competing affidavits, the trial court denied the Griffeys' summary judgment motion because "a material issue of fact remain[ed] as to whether and to what extent Plaintiffs ha[d] been damaged by the improperly installed gutters and downspouts." *Id.*

{¶ 8}   Before trial, the Griffeys renewed their request that the trial court prevent the Association from presenting evidence.  Aug. 6, 2019 Motion to Preclude Defendants from Calling Witnesses and Presenting Exhibits at Trial.   The trial court declined to do so, overruling the motion the following week as trial began.   Aug. 13, 2019 Transcript at 2.

{¶ 9}   In the event, the Griffeys themselves called Ms. Watkins as part of their case. (She testified, among other things, that the new gutters had been installed in response to the Griffeys' complaints; that Mr. Holtzapple had reported finding no dampness in the crawl space; and that the Association had received no report that anything was wrong with the siding.  Tr. at 93, 96-97.)   They also called Association Board representative Lynn Stoycheff, whose testimony included that the Griffeys had "wanted to have the siding taken down and checked, but there was no evidence that there was a need to do it"; when examined by the Association's counsel, she further averred that she was not aware of any report from either expert recommending foundation or crawl space repairs, and that no one ever had shown the board any particular problem with the siding.  *Id.* at 44, 56-58.

{¶ 10}  Mr. Robinson testified, too, reiterating that he had encountered crawl space "dampness" on his April 2017 visit, explaining the gutter problems he observed, discussing what he saw as (reparable) foundation block "deterioration," with "loose concrete particles," and saying again that he would recommend taking off the rear wall siding "in order to detect any potential * * * wood rot" that he believed, in the words of the Griffeys' lawyer, "could be a legitimate concern."  *Id.* at 117, 127-30, 135-36.  On cross-examination, he acknowledged that his written report had not recommended foundation repairs, that he had no evidence of siding mold or mildew, and that if there had been water behind the siding, he would have expected evidence of such a problem to appear over the period between his 2017 inspection and the 2019 trial.  *Id.* at 139-40, 143.

{¶ 11}  And Ms. Griffey spoke to the gutter problems, her expressions of concern to the property manager in 2014 or 2015 about foundation deterioration, three or four unsuccessful requests to speak with the Association board, and the concerns she expressed to Ms. Watkins in 2017 about the foundation and siding, as well as about the Association's March 2017 attempted gutter fix with the extender installation.  *Id.* at 160, 167, 169-70, 221-22.  She also discussed the expert reports and her having shown Mr. Holtzapple what she viewed as the problems.  *See, e.g., id.* at 222.  She testified that she paid Mr. Robinson a

total of $400 for his inspection, *id.* at 210, and that she had obtained legal counsel in August of 2017 (at a point after the Association had had Mr. Holtzapple conduct his July 2017 inspection, and in "response" to an Association communication that included agreement to fix the gutters), *id.* at 171. She paid that first lawyer $1,380, she said, and she testified to invoices from her current lawyers. *Id.* at 210-11.

{¶ 12} On cross-examination and without objection, Ms. Griffey identified her two claims in the case as being that the Association had breached its contract by failing to make foundation repairs and by not removing the rear siding to determine whether there had been any water damage. *Id.* at 225-26. She acknowledged that Mr. Robinson's report "did not make a recommendation" that the foundation be repaired. *Id.* at 226. As to the siding, when asked with reference to her expert Mr. Robinson's testimony that any issue of water behind the siding would have manifested itself by the time of trial, she responded: "I have not seen anything visually myself to report that." *Id.* at 228. She did not take the Association up on its offer to have her remove siding as part of discovery because "[i]t is not my responsibility," and she conceded that "I don't have any proof" of underlying water damage. *Id.* at 229. Nonetheless, she said she did want enough of the siding removed "to see what, if anything, has happened in seven years." *Id.* at 230; *see also id.* at 237 (looking to disclosures for when she sells the condo: "I want to be able to show, well, this was inspected. This was done. No damage. No structural damage.").

{¶ 13} After the close of their case, the Griffeys voluntarily dismissed their negligence, breach of warranty, and breach of fiduciary duty claims, leaving their breach of contract claim. *Id.* at 251; Decision Following Bench Trial at 2.

{¶ 14} The Association called Mr. Holtzapple. He testified to his inspection and to Ms. Griffey having walked him around to identify her areas of concern, that he found no evidence of water intrusion in the crawl space, and that he had determined that the foundation "was structurally sound and stable so no repairs would have been necessary." *Id.* at 268-70 (adding that concrete "pitting" has no structural significance). He described the gutter problem and his recommendation that the gutters be fixed. *Id.* at 271-72, 279. He observed no issues with the siding, and also agreed that any problems of water behind the siding would have manifested themselves by the time of trial. *Id.* at 273, 293, 301.

{¶ 15} The parties agreed to submit written closing arguments. Urging judgment for their breach of contract claim, the Griffeys correctly noted that they were required to prove that they had a contract with the Association, that they had performed their part of it, that the Association had breached the contract, and that they suffered resulting damage or loss. Aug. 28, 2019 Plaintiffs' Closing Statement at 7, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (1oth Dist.2007). They argued that while they had established that they had satisfied their obligation to pay Association fees, they also had shown "by a preponderance, that the Association breached the contract by failing to inspect – for latent defects – repair and maintain the common area at issue; the concrete block wall foundation, the siding and the supporting structural rear wall of Plaintiffs' Unit and its component systems." Plaintiffs' Closing Statement at 8. As itemized damages, they listed the $400 cost of the Robinson inspection, $1,380 for the first lawyer (hired after the Holtzapple inspection), and $11,021.50 for the second set of lawyers (for work done after the gutter repairs were finished, but "not including through trial"). *Id.* at 9.

{¶ 16} Finding against the Griffeys, the trial court noted that the Association had "performed the requested repair to the gutters and downspouts," and found that the Griffeys had failed to establish that any other work was required. Decision at 2, 3-4. "Defendant investigated Plaintiffs' [foundation and siding] claims and determined that no work beyond repair of the gutters and downspouts was necessary"; Plaintiffs "failed to prove their breach of contract claims" relating to those matters. *Id.* at 4. And "even if the Court were to find Defendant in breach for failing to repair the improperly installed gutters and downspouts sooner, the * * * Plaintiffs failed to prove any resulting damages." *Id.* at 3. Mr. Robinson's invoices did not include an "hourly rate or hourly breakdown of services," the trial court added, and the Griffeys had "provided no invoices or any other information regarding the type of legal work performed" by their first lawyer, or what his hourly rate or amount of work had been. *Id.*

{¶ 17} The Griffeys appeal that decision based on two assignments of error:

> [1.] The Trial Court erred and abused its discretion in permitting Defendant/Appellee to submit an expert witness disclosure out of rule and in permitting that expert witness to testify at the trial of this matter.
>
> [2.] The Trial Court's Judgment Entry and Decision following bench trial was against the manifest weight of the evidence.

Appellants' Brief at 1. We are not persuaded.

{¶ 18} Under their first assignment of error, the Griffeys contend that the trial court erred in admitting the testimony of Mr. Holtzapple because the Association was delinquent in disclosing him as a witness. Citing Loc.R. 43.04 of the Franklin County Court of Common Pleas, General Division, which states that "[a]ny witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires," they argue that "the Association never demonstrated any good cause" for its violation of rule and "protocols of discovery." Appellants' Brief at 12. That argument, we note, may not quite jibe with the local rule, which on its face permits a trial court to allow testimony for good cause and as appropriately conditioned. *Compare Jubilee Ltd. Partnership v. Hosp. Properties, Inc.*, 10th Dist. No. 09AP-1145, 2010-Ohio-5550, ¶ 46 ("Loc.R. 43 permits the trial judge to allow the testimony 'for good cause and subject to such conditions as justice requires' ") and *Basil v. Wagoner*, 10th Dist. No. 94APE12-1716, 1995 Ohio App. LEXIS 3965, at *6 (Sep. 12, 1995) (rule "permits the trial judge to allow the testimony 'for good cause * * *"), *with Dees v. Traffic Specialists*, 10th Dist. No. 96APE07-972, 1997 Ohio App. LEXIS 789, at *5-6 (Mar. 4, 1997) ("We cannot say that the trial court abused its discretion in finding that appellant failed to show good cause, pursuant to Loc.R. 43.04, for failing to disclose Herald as a witness in a timely manner"; exclusion upheld as discovery sanction).

{¶ 19} In any event, the well-established standard is that: "An appellate court reviews a trial court's decision to allow the testimony of an undisclosed witness under an abuse of discretion standard." *Jubilee* at ¶ 45 (citations omitted); *see also Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraph one of the syllabus (applying abuse of discretion standard to trial court ruling denying motion in limine seeking to exclude testimony of non-disclosed medical expert under local rule). And we have made very clear that in the exercise of that discretion, a trial court may permit appropriately conditioned testimony by a witness belatedly disclosed where there is no undue prejudice or surprise: "Our past cases have considered whether a party suffered 'undue prejudice or surprise' if the witness was permitted to testify when not properly disclosed prior to trial." *RAE Assocs. v. Nexus Communications, Inc.*, 10th Dist. No. 14AP-482, 2015-Ohio-2166, ¶ 42 (citing *Woodruff v. Barakat*, 10th Dist. No. 02AP-351, 2002-Ohio-5616, ¶ 17, and adding that "[i]f opposing

counsel is on notice of the existence of a potential witness and the content of the testimony, the court may be reluctant to exclude the witness from testifying"). *See also Jubilee* at ¶ 47 ("the trial court did not abuse its discretion because HPI was not prejudiced").

{¶ 20} Here, it is undisputed that Mr. Holtzapple and his views were well known to plaintiffs even before they filed suit; Ms. Griffey had accompanied him on his inspection, and they had a copy of his report. Moreover, he had been identified as a witness months before trial: the Association had used his affidavit in opposing summary judgment and moved for leave to identify him as a witness while also offering him for deposition, and the trial court granted that leave on April 4, 2019, some four and a half months or so before the trial.

{¶ 21} Under these circumstances, we cannot say that the trial court abused its discretion in permitting Mr. Holtzapple to testify. *See also, e.g., Heilman v. Weltzheimer*, 10th Dist. No. 80AP-524, 1981 Ohio App. LEXIS 10746, at *4 (May 28, 1981) (where appellant "could have moved the court for an order compelling discovery," but failed to do so, trial court did not abuse its discretion in refusing to exclude undisclosed witness); *Woodruff*, 2002-Ohio-5616, at ¶ 17 (no prejudice to defendant where "several weeks before trial the parties had the opportunity to take [plaintiff's expert's] deposition" after initial failure to disclose expert); *Basil,* 1995 Ohio App. LEXIS 3965, at *6 (no prejudice where appellants were "on notice of the existence of the potential witnesses and were provided with the 'entire files' of the experts well before the trial date, yet after the original discovery deadline had lapsed").

{¶ 22} We overrule the Griffeys' first assignment of error (and for that reason among others do not follow what we take to be the Association's suggestion to assess whether the Griffeys failed to meet their burden even looking only to their own evidence, *see* Appellee's Brief at 31-32).

{¶ 23} The Griffeys' second assignment of error, that the trial court's judgment was against the manifest weight of the evidence, requires us to undertake a "limited reweighing of the evidence" in something of the role of a " 'thirteenth juror.' " *Chefor v. Morgan*, 10th Dist. No. 13AP-100, 2013-Ohio-4213, ¶ 11-12 (citations omitted). "[I]n reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether,

in resolving conflicts in the evidence, the finder of fact clearly lost its way." *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 19. We are guided in this effort by a " 'presumption in favor of the finder of fact' " that applies to questions of weight and credibility. *Id.* at ¶ 19, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, ¶ 21. " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) (further citation omitted).

{¶ 24} Having reviewed the evidence, we cannot say that the trial court clearly lost its way in concluding that the Griffeys failed to establish damage from any Association breach of contract. Mr. Robinson did testify that he perceived "deterioration of the siding," Tr. at 145, but the Griffeys were not arguing that the siding necessarily needed to be replaced; their claim, rather, was that the rear siding should be taken off and inspected for possible rot, mold, or the like. Mr. Robinson averred that any such hypothetical issues likely would have become manifest by the 2019 trial date (a point in which Mr. Holtzapple concurred), while Ms. Griffey conceded that no expert had said that repairs to the wall were necessary and that she had not seen indicia of water intrusion behind the siding. *Id.* at 143-44, 226, 228. Mr. Holtzapple's testimony that he witnessed no damage to the siding and saw no need to tear it apart, Tr. at 273, 281-82, 293, 301, only bolsters the trial court's view that the Griffeys failed to show that "problems exist behind the siding." Decision at 3, 4.

{¶ 25} The Griffeys' case that their foundation needed to be repaired was scarcely stronger. Mr. Robinson found a crawl space damp, but Mr. Holtzapple found it dry when he went there; in any event, the Griffeys pointed to no damage linked to the Robinson observations and offered no evidence that the crawl space was damp at any time after the September 2017 gutter replacement. Mr. Robinson's report did not specify foundation repairs (although he discussed possible remedial approaches at trial), and Mr. Holtzapple (a structural engineer who said that he "made a general inspection of the entire property," including the rear wall, and examined the areas pointed out by Ms. Griffey, Tr. at 268, 277) testified strongly that none were needed: "no repairs would have been necessary" because "it was structurally sound and stable," Tr. at 270.

{¶ 26} The trial court's conclusions that the Griffeys failed to establish their (unquantified) claims of siding and foundation damage were not against the manifest weight of the evidence. And they make no supportable argument as to why, having lost on what they said their breach of contract claims were, *see, e.g.*, Tr. at 225-26, Plaintiffs' Closing Statement at 7-8, they now should be entitled to legal fees for their first lawyer (as apparently retained after the Association had summoned Mr. Holtzapple to inspect and had agreed to replace the gutters, *see* Tr. at 173), or for their current counsel (whose billing records don't *start* until *after* the gutters were fixed, *see* Plaintiff's Ex. 19). Further, the trial court was entirely correct that the Griffeys provided no information as to what their first lawyer did, or what his rates or hours were. *See* Decision at 3.

{¶ 27} And while we might have been persuaded to uphold a trial court award of $400 to the Griffeys for what they paid Mr. Robinson, we cannot say that, with every reasonable intendment and presumption made in favor of the judgment, the trial court's failure to make such an award goes against the manifest weight of the evidence. *See Eastley*, 132 Ohio St.3d 328, 334. The trial court was unable to determine any "hourly breakdown" of Mr. Robinson's services, Decision at 3, potentially including his crawl space explorations and the like. More significantly, perhaps, the Griffeys do not explain why the trial court should have been compelled to conclude that absent Mr. Robinson's visit, the gutters would not have been fixed. They point us to no such direct testimony and, while the Griffeys had been complaining about gutter-related issues for a prolonged period, the Association had made its first attempt to respond to the problem in March 2017 (before Mr. Robinson appeared on the scene) when it installed the gutter extender/diverter that proved unsuccessful; further, the Association's agent testified that "the Griffeys still had complaints about water overshooting their gutter" after the diverter was installed, "[a]nd so the board undertook to put in new gutters with larger dimensions." Tr. at 93 (Ms. Watkins agreeing with proposition of the Griffeys' counsel). That an inference is permitted does not make it mandatory, and we think that this is a situation in which "although a finder of fact is permitted to draw reasonable inferences from proven facts, it is not required to do so." *Charles v. Peters*, 2d Dist. No. 2015-CA-52, 2016-Ohio-1259, ¶ 24 (citations omitted). Even if Mr. Robinson's bills can be severed from the Griffeys' underlying contract claims

regarding the foundation and siding, we cannot appropriately reverse the trial court on this score under the manifest weight of the evidence standard.

{¶ 28} We overrule the Griffeys' second assignment of error.

{¶ 29} We affirm the judgment of the Franklin County Court of Common Pleas that heard the evidence at trial.

*Judgment affirmed.*

SADLER, P.J. and BRUNNER, J., concur.

_____